UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

LINDA ROSE, JENNIFER CRADIT,
SYLVIA DENISE BRADDOCK, LISA
RENEE BRANDIMORE, DWAYNE
BUTTERFIELD, BOBBIE WAYNE
CARTER, DANIEL WRAY CLAYTON,
JOSHUA FULLER, NICHOLAS ANTHONY
GILES, WILLIE LOUIS HENDRICKS,                    Case Number 01-10337-BC
TANISHA RAMON JOHNSON, ROBERT                     Honorable David M. Lawson
ALLEN KELSEY, SUE ANN LETTERMAN,
DONNA LYNN QUARLES, GREGORY LOUIS
SCHULTZ, AMANDA RAE SHINAVER,
DWAYNE ALANN SIMMONS, ROBIN RENEE
THOMAS, JOSHUA ALLEN WEIGANT,
JUSTIN ANDERSON, CRAIG MASON, and
MATTHEW STARKWEATHER,

                        Plaintiffs,

v.

SAGINAW COUNTY, SAGINAW COUNTY
SHERIFF'S DEPARTMENT, MUNICIPAL
GOVERNMENTAL ENTITIES, CHARLES BROWN,
and OFFICERS JOHN DOE, and JANE DOE,
(in their individual capacity), jointly and severally,

                        Defendants.
_____ /

## OPINION AND ORDER DENYING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND DENYING DEFENDANTS' MOTION TO AMEND AFFIRMATIVE DEFENSES

This matter is before the Court on various procedural motions filed by the parties. Although the Court previously bifurcated the case and determined the liability question upon adjudication of the parties' cross motions for summary judgment, through the present motions – the plaintiffs' motion for class certification and the defendants' motion for leave to file new affirmative defenses – the parties seek to unwind the litigation as it has proceeded thus far and litigate different theories

involving additional claimants. The Court heard the parties arguments in open court on November 9, 2005 and now finds that the plaintiffs have not demonstrated the propriety of certifying the matter as a class action, the plaintiffs' motion is filed too late, equitable estoppel or tolling does not save it because they have submitted no evidence of wrongful behavior by the defendant, the defendants' proposed amended affirmative defenses would be futile because (with one exception) they would not bar the plaintiffs' claims, and the request to amend is untimely. The Court, therefore, will deny the parties motions.

I.

The plaintiffs initial complaint was filed on October 9, 2001. It named as plaintiffs Linda Rose, Jennifer Cradit, and Jane Doe Detainees of the Saginaw County Jail. The complaint sought class action certification. According to the case management and scheduling order, as amended by this Court's July 23, 2002 order, the plaintiffs were required to file any motion for class certification by September 13, 2002.

The present plaintiffs, twenty-two individuals, claim they were subjected to an unconstitutional policy by officials at the Saginaw County jail when they were held as pretrial detainees at various times between May 1999 and December 2001. They contend that the Saginaw County sheriff instituted a policy and practice of housing uncooperative and disruptive detainees in administrative segregation cells; and jail personnel would take all of the clothing from such detainees so that they were naked for the time that they spent in administrative segregation. The complaint and its several amendments assert claims under 42 U.S.C. § 1983 and state law.

At a scheduling conference on May 14, 2002, the defendants stated that only thirty prisoners housed as pretrial detainees had been put in a cell naked over the prior three years. The defendants

-2-

claimed to have eliminated the practice after the suit was filed.  The plaintiffs failed to file a motion for class certification prior to September 13, 2002, apparently based on the defendants' representation that only thirty people were affected by the policy.

The plaintiffs amended their complaint from time to time with leave of court in order to add additional plaintiffs who emerged during the pendency of the case and alleged that they also were subjected to the naked detention policy.  On December 9, 2002, the plaintiffs filed their sixth amended complaint.  The amended complaint added more named plaintiffs and repeated the allegations that the plaintiffs, when detained while awaiting arraignment or trial, were forced to disrobe in the presence of corrections officers even though there was no reason to believe the plaintiffs were dangerous or possessed weapons.  The amended complaint focused on the viewing of the plaintiffs' naked bodies by jail personnel and alleged constitutional violations, gross negligence, invasion of privacy, assault and battery, intentional infliction of emotional distress, and violation of the Michigan Elliott Larson Civil Rights Act, Mich.  Comp.  Laws. § 37.2101 *et seq.* This version of the complaint omitted reference to class action certification, but it did request injunctive relief to prevent the defendants from engaging in the alleged illegal behavior.

In February 2003, a local television station showed a story about the naked segregation policy.  The plaintiffs' lawyers apparently received a number of phone calls after the story aired, leading them to dozens of potential plaintiffs.  The plaintiffs have collected data from these potential plaintiffs, which they have presented to the court in a chart attached to the motion.

On December 22, 2004, the plaintiffs filed a motion to join even more parties as plaintiffs. They argued that the defendant had misrepresented the extent to which the naked segregation policy had been applied.  The plaintiffs stated this misrepresentation prevented them from discovering 100

-3-

additional potential grievants in a timely manner and caused them to withdraw their class action claims. The plaintiffs' motion requested permission to add additional plaintiffs discovered some time after the filing of the lawsuit. The defendants opposed the motion stating the plaintiffs had not shown good cause, and the defendants would be prejudiced if the motion were granted. The defendant also claimed many of the new plaintiffs' claims would be barred by the statute of limitations.

On January 26, 2005, the Court filed an opinion adjudicating the parties' cross motions for summary judgment. The Court addressed and resolved all of the liability issues in the case, holding that the naked detention policy was unconstitutional as applied to pretrial detainees. The Court dismissed the other counts. *Rose v. Saginaw County*, 353 F. Supp. 2d 900 (E.D. Mich. 2005). The Court also denied the plaintiffs' motion to add additional parties plaintiff and stated that "[a]dding new parties as plaintiffs would serve to further complicate the litigation" because extensive discovery had already taken place and the defendants' assertion that the statute of limitations barred many of the new plaintiffs' claims. *Id.* at 926. The Court suggested that any new claimants not barred by the statute could file their own lawsuits.

On April 29, 2005, the plaintiffs filed a motion for class certification or, in the alternative, for joinder. The plaintiffs submitted an affidavit of Peggy Goldberg Pitt, a lawyer working on the case. Attached to the affidavit is a chart listing plaintiffs and potential plaintiffs, a summary of what happened to them, the date of their detention, and other information. The list indicates that sixty-four people were subject to the naked detention policy. Twenty of these people are original plaintiffs in the case, leaving forty-four new possible plaintiffs. The affidavit states that twenty-

three people were segregated while naked from 2002 through the date of the motion, despite the defendants claims that they have ended the naked detention policy.

The defendants dispute much of the data included in the chart and point out that the chart contains either unsworn averments or statements not based on firsthand knowledge of any of these incidents actually happening.  The defendants state they ended the unconstitutional policy in November 2001 when this lawsuit was filed.  They also contend that only seven of the new potential plaintiffs on the chart were actually pretrial detainees when they were placed in administrative segregation cell.  The other thirty-seven had been convicted of a criminal offense.  Moreover, the defendants state, eleven of the potential plaintiffs were not even in the jail on the dates alleged according to jail records, and eight were never in administrative segregation.

In the mean time, on July 25, 2005 the defendants filed a motion to amend their affirmative defenses to claim that the Prisoner Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), requires the plaintiffs to exhaust their remedies prior to filing suit in court and limits damages where no physical injury has been sustained.  The plaintiffs contest this motion on the ground that it is untimely and the PLRA does not apply to them.

## II.

In order to be certified as a class action under Federal Rule of Civil Procedure 23, the moving party must establish that the class meets the numerosity, commonality, typicality, and adequacy of representation requirements of Rule 23(a) and falls into one of the subcategories found in Rule 23(b).  *Sprague v. General Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998).  However, before the Court can assess the application of Rule 23's elements, the moving party must offer a

-5-

definition of the class itself.  Without such a definition, a proper analysis of the utility and propriety

of proceeding as a class action cannot be made.  As explained by other district courts:

> Rule 23(a) also contains an implicit requirement that the class be adequately defined and clearly ascertainable. . . . While the precise numbers of proposed class members need not be established, . . . the class description must be sufficiently definite for the court to ascertain member status.

*Rink v. Cheminova, Inc.*, 203 F.R.D. 648, 659 (M.D. Fla. 2001) (internal quotes and citations

omitted).

> Before the Court may certify a class pursuant to Rule 23, "the class definition must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class." 5 James W. Moore et al., Moore's Federal Practice et al. ¶ 23.21[1] (3d ed.1998). The identity of class members, moreover, must be ascertainable by reference to objective criteria. . . . A precise definition allows the Court to determine who would be entitled to relief, who would be bound by a judgment, and who is entitled to notice of the action. *See* 5 Moore's Federal Practice ¶ 23.21[3].

*Garrish v. United Auto., Aerospace, and Agric. Implement Workers of Am.*, 149 F. Supp. 2d 326,

330-31 (E.D. Mich. 2001) (citations omitted).

The lack of a precise definition compounds the problem in a case in the procedural posture

of this one because the previous liability determination necessarily turned on the status and

circumstances surrounding the detention of the named plaintiffs.  Where the implied definition of

the class advanced by the plaintiffs would allow others who do not share all of the features of those

named plaintiffs to benefit from that ruling, the Court's liability holding could be distorted.

At oral argument, the plaintiffs conceded that they had not offered a specific class definition

in their motion papers.  The Court directed them to submit a definition, and the one furnished after

the argument reads as follows:

-6-

> All detainees who were placed in administrative segregation in the Saginaw County
> Jail from October 19, 1998 and were stripped of their clothing before being placed
> in administrative segregation pursuant to Defendants' policy.

Pls.' Supplemental Br. at 1. As discussed at oral argument, that definition certainly includes the named plaintiffs – and more. Despite the arguments of the plaintiffs to the contrary, the definition expands the class to deal with a broader group of persons that includes those who are materially different than the named plaintiffs in at least two respects: inmates who are not pretrial detainees; and persons placed in administrative segregation who were given "suicide gowns," that is, paper gowns that covered their private parts.

The core holding of the liability opinion in this case was that the County's policy of removing all clothing from pretrial detainees housed in administrative segregation violated the detainees' due process rights, inasmuch as policy was an exaggerated response to the County's articulated concerns about suicide, the guards' safety, and administrative costs, and given the magnitude of the right to privacy in one's own body and availability of alternatives to the policy (such as suicide gowns); and the policy was unreasonable under the Fourth Amendment because the scope of the intrusion was substantial, and the detainees had a legitimate expectation that they would not be required to forfeit all clothing and covering, even for a brief time, when they had been detained for relatively minor violations, there was no individualized suspicion of drug, weapon, contraband possession, and there was no indication that they were suicidal. *Rose*, 353 F. Supp. 2d at 922-23. The plaintiffs argue that in reaching that result, the Court cited cases that dealt with convicted inmates, such as *Cornwell v. Dahlberg*, 963 F.2d 912 (6th Cir. 1992), *Kent v. Johnson*, 821 F.2d 1220 (6th Cir. 1987), *Wilson v. City of Kalamazoo*, 124 F. Supp. 2d 855 (W.D. Mich. 2000), and *Everson v. Michigan Dept. of Corrections*, 391 F.3d 737 (6th Cir. 2004). But those cases

-7-

were cited for the sole proposition that "prisoners have a liberty and privacy interest in shielding their naked bodies from view by others, especially members of the opposite gender." *Rose*, 353 F. Supp. 2d at 919. In order to determine whether a particular practice is unconstitutional, the Court must balance that interest against the competing consideration whether "the regulation is . . . reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). In this case, the Court relied heavily on *Bell v. Wolfish*, 441 U.S. 520 (1979), in striking that balance, which discusses the rules applicable to pretrial detainees.

The difference between pretrial detainees – that is, those who are presumed innocent of crime – and convicted inmates who are sentenced to a punishment, might call upon the Court to weigh that balance on different scales. On the other hand, the interests might be identical. However, injecting the extra factor into this case by expanding the universe of possible plaintiffs makes this a different case than the one the Court decided in its summary judgment opinion. It is that primary reason that impels the Court to view the plaintiffs' proposed class definition as problematical at this stage of the proceedings. In order to accommodate the definition, the Court must plow old ground and reassess the issues already decided in the summary judgment motions in a new light. Of course, the defendants quite properly could demand their right to be heard again since the case becomes a new and different lawsuit.

The court is simply unable to grant certification without a class definition "sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class." *Garrish*, 149 F. Supp. 2d at 330-31. From the list of potential claimants submitted by the plaintiffs, it appears that the class they seek to have certified includes all detainees from 1998 to present who were sent to administrative segregation, either naked

or with a paper gown, whether they were pretrial or postconviction detainees, and whether or not they were exposed to members of the opposite sex.

The plaintiffs state in their reply brief that they "have not limited their claim to pretrial detainees." Pl.'s Reply at 4. However, all the named plaintiffs in the several amended complaints were pretrial detainees. In their motion for summary judgment, which resulted in a ruling that the policy was unconstitutional as applied to pretrial detainees, the plaintiffs stated, "Plaintiffs are pretrial detainees accused of misdemeanors, not felonies." Pl.'s Mot. Summ. J. at 9. The plaintiffs describe the policy as one that requires officers "to strip naked pretrial detainees for insubordination." *Id.* at 1. The argument section of their brief stated that the officers must have probable cause for "any significant pretrial restraint of liberty." *Id.* at 10. The brief contains an entire section about the punishment of people not convicted of any crime. *Id.* at 15-17. It plainly appears that the plaintiffs were arguing on behalf of a group of plaintiffs defined as pretrial detainees who were stripped naked.

Certifying the plaintiffs' proposed class is not the superior method of addressing the issue of other individuals who claim a violation of their constitutional rights. Accepting the plaintiff's proposed class definition would require the Court to scuttle its previous decision and rebalance the factors it assessed when determining the constitutional issues under the Fourth Amendment and the Due Process Clause. The Court is not willing to pursue that course.

Attempting to define the class after the liability determination has been made creates additional problems with respect to the other requirements of Rule 23(a). In determining whether "the class is so numerous that joinder of all members is impracticable," the Court must consider the plaintiffs' submissions in light of the opinion deciding the cross motions for summary judgment.

Although a strict numerical test does not exist to determine when the class is too numerous to join, *Bremiller v. Cleveland Psychiatric Inst.*, 195 F.R.D. 1, 19 (N.D. Ohio 2000), there must be some evidence to establish generally that "the number of potential class members is large, even if plaintiffs do not know the exact figure." *In re Consumers Power Co. Sec. Litig.*, 105 F.R.D. 583, 601 (E.D. Mich. 1985). Even "[w]here the exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied." *Orantes-Hernandez v. Smith*, 541 F. Supp. 351, 370 (C.D. Cal.1982).

The plaintiffs argue that they have identified forty-four new possible plaintiffs. However, as the defendants point out, only seven of the new potential plaintiffs on the chart were actually pretrial detainees when they were placed in administrative segregation cell. It is not clear how many of those were given paper gowns when their clothing was taken. However, the Court is not satisfied that the number of potential new plaintiffs is so large that class certification is a preferred or joinder of all plaintiffs is impractical.

The commonality requirement, that is, establishing that "there are questions of law or fact common to the class," Fed. R. Civ. P. 23(a), is also problematic, given the plaintiffs' proposed class definition. The Sixth Circuit has held that the commonality and typicality requirements tend to merge  because "[b]oth serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Rutherford v. City of Cleveland,* 137 F.3d 905, 909 (6th Cir. 1998) (quoting *Gen. Tel. Co. of the Southwest v. Falcon,* 457 U.S. 147, 157 n.13 (1982)). The Court does not believe it allowable to confound pretrial detainees and convicted inmates, as the plaintiffs

-10-

propose to do, because each group presents different questions as to the application of custodial policies. The groups do not present common questions of law; different considerations may apply when balancing constitutional rights against legitimate penological interests.

As to the third element, a claim is typical if "it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996). Although the named plaintiffs' claims must fairly encompass the class members' claims, they need not always involve the same facts or law provided there is a common element of fact or law. *Senter v. General Motors Corp.* 532 F.2d 511, 525 n.31 (6th Cir. 1976). However, the potential difference between pretrial and post-conviction inmates, and those who were confined completely naked and those given paper gowns, presents distinguishing legal issues that upset the claim of typicality.

The fourth prerequisite for class certification is the adequate representation of the class by the class representatives. Adequate representation includes two inquiries: (1) whether the class counsel are "qualified, experienced and generally able to conduct the litigation" and (2) whether the class members have interests that are antagonistic to the other class members. *Stout v. J.D. Bynder,* 228 F.3d 709, 717 (6th Cir. 2000). "The bedrock requirement of adequacy is that the named representatives be a member of the class." *Rockey v. Courtesy Motors, Inc.*, 199 F.R.D. 578, 585 (W.D. Mich. 2001). This factor likely is satisfied because the named plaintiffs occupy a smaller universe within the broader definition of class proposed.

The plaintiffs cite *Tardiff v. Knox County*, 365 F.3d 1 (1st Cir. 2004), in support of their position that class certification is appropriate, but the Court reads that case as an illustration of the difficulty that can result from an attempt to broaden the class definition, as the plaintiffs here

-11-

propose, after a decision on the merits that accounts for characteristics of the named plaintiffs not shared by the broader proposed class. In that case, the court of appeals affirmed district court orders certifying classes of pretrial detainees who were subjected to a strip search policy as part of a county jail's intake process. The district court had addressed the "complications" arising from the fact that the policy "might be lawful as to some groups of arrestees . . . and not others . . . by narrowing the class." *Id.* at 5. The court of appeals discussed the potential difficulties in class administration that might arise when individual class members present issues as to liability that are not common to the other members of the class. That possibility, the court believed, did not present an obstacle to class certification in the *beginning* of the case because the district court retained the option "to consider [further] narrowing or de-certifying the class." *Id.* at 6. Those options no longer exist in this case because the Court's opinion, discussed above, likely applies to a narrower range of detainees than the group proposed by the plaintiffs.

For these reasons, the Court will deny the motion to certify the action as a class action.

III.

The plaintiffs request in the alternative that they be allowed to amend their complaint to join additional plaintiffs and that the statute of limitations be tolled for the new claimants. That request was made earlier and denied as part of the Court's January 26, 2005 opinion. *See Rose*, 353 F. Supp. 2d at 926. No reason has been presented to change that ruling now.

The plaintiffs claim they are not barred by the statute of limitations because the defendants' misbehavior prevented them from discovering these new potential plaintiffs in a timely fashion, making equitable tolling applicable. Equitable tolling requires proof that the defendants took affirmative steps to conceal the plaintiffs' cause of action and that the plaintiffs could not have

-12-

discovered the cause of action despite exercising due diligence.  *Jarrett v. Kassel*, 972 F.2d 1145, 1423-24 (6th Cir. 1992).

The plaintiffs claim that they were misled by the defendants' assertion that only thirty people were affected by the policy.  However, the defendants were working on the assumption, reasonably based on the plaintiffs' prior assertions and motions, that the class was limited to pretrial detainees. The plaintiffs have submitted no evidence that the group of pretrial detainees who were stripped naked and not given a paper gown is significantly larger than thirty people.  Moreover, the comment allegedly was made by the defendants in May 2002.  Many of the new people the plaintiffs want to add were incarcerated after that date and could not have been considered by the defendants at the time the comment was made.

The defendants state that the plaintiffs did not use due diligence and therefore do not qualify for equitable tolling.  "If the plaintiff has delayed beyond the limitations period, he must fully plead the facts and circumstances surrounding his belated discovery 'and the delay which has occurred must be shown to be consistent with the requisite diligence.'"  *Campbell v. Upjohn Co.*, 676 F.2d 1122, 1127 (6th Cir. 1982).  The plaintiffs have not provided any information about steps it took to verify that the comment made by the defendant was correct or not.

Finally, if defenses against the statute of limitations could be brought in this case, they also could be advanced in a separate action by individual plaintiffs who claim that they were aggrieved by the County's detention policy.  The Court will not permit a further amendment of the complaint.

<div align="center">IV.</div>

The defendants likewise seek to amend their pleadings.  They contend that the plaintiffs were required to exhaust their administrative remedies under the Prisoner Litigation Reform Act prior to

<div align="center">-13-</div>

filing suit, *see* 42 U.S.C. § 1997e(a), and because the defendants failed to raise that defense earlier in the litigation, they seek leave to amend their answer so they can raise it now.  They also wish to plead the PLRA's limitation on damages, *see* 42 U.S.C. § 1997e(e), as an affirmative defense.

Under Federal Rule of Civil Procedure 15(a), a party may amend its pleadings at this stage of the proceedings only after obtaining leave of court.  Although the Rule provides that "leave of court shall be freely granted when justice so requires," leave may be denied on the basis of undue delay, bad faith by the moving party, repeated failure to cure defects by previously-allowed amendments, futility of the proposed new claim, or undue prejudice to the opposite party.  *Forman v. Davis,* 371 U.S. 178, 182 (1962); *Duggins v. Steak & Shake, Inc.,* 195 F.3d 828, 834 (6th Cir. 1999); *Fisher v. Roberts,* 125 F.3d 974, 977 (6th Cir. 1997).  "Notice and substantial prejudice to the opposing party are critical factors in determining whether an amendment should be granted." *Wade v. Knoxville Util. Bd.*, 259 F.3d 452, 458-459 (6th Cir. 2001).  The Rule does not establish a deadline within which a party must file a motion to amend.  *See Lloyd v. United Liquors Corp*., 203 F.2d 789, 793 (6th Cir. 1953) (reviewing a district court's denial of a motion to amend after the entry of summary judgment).  However, the party seeking to amend should "act with due diligence if it wants to take advantage of the Rule's liberality."  *Parry v. Mohawk Motors of Michigan, Inc.*, 236 F.3d 299, 306 (6th Cir. 2000).  Thus, where "amendment is sought at a late stage in the litigation, there is an increased burden to show justification for failing to move earlier."  *Wade*, 259 F.3d at 459.  Courts are especially inclined to deny a motion brought under Rule 15 "if the moving party knew the facts on which the claim or defense sought to be added were based at the time the original pleading was filed and there is no excuse for his failure to plead them." 6 Charles Alan Wright *et al.*, Federal Practice and Procedure § 1487 (2d ed. 1990); *see Wade*, 259 F.3d at 459 (finding undue

-14-

delay where the plaintiff knew the facts forming the basis of the amended claims but failed to plead the claims in the original complaint).

The plaintiffs argue that the defendants should not be allowed to amend their affirmative defenses because the request comes too late, that is, six months after the liability opinion was filed, and the amendment would be futile because the PLRA does not apply to them. The Court agrees.

The PLRA's exhaustion requirement reads as follows:

No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). The plaintiffs argue that the statute does not apply to former prisoners, and the defendants contend that it does. The Sixth Circuit has not ruled on this issue.

By its terms, the statute applies to lawsuits brought by "a prisoner confined in any jail, prison, or other correctional facility." None of the named plaintiffs, save one, was an inmate at the time suit was filed; they all had been released. The statute has a temporal element in its language: it is directed to lawsuits by prisoners who are presently confined, not those who were confined at the time the cause of action arose or any other time.

That construction is consistent with the purpose of the PLRA, which, according to its sponsors, was enacted to curb abuses by prisoners filing frivolous lawsuits in the federal courts. For example, Senator Dole commented that "[t]his legislation is a new and improved version of S. 866, which I introduced earlier this year to address the alarming explosion in the number of frivolous lawsuits filed by State and Federal prisoners." 141 Cong Rec S14413 (daily ed. Sept. 27, 1995). Senator Kyl, a sponsor of an earlier version of the Bill, decried the proliferation of frivolous lawsuits by prison inmates, noting that "[f]iling frivolous civil rights lawsuits has become a recreational

-15-

activity for long-term residents of our prisons." 141 Cong Rec S7526 (daily ed. May 25, 1995).  The

reforms introduced included the exhaustion requirement.  Senator Kyl explained, "Section 7 will

make the exhaustion of administrative remedies mandatory.  Many prisoner cases seek relief for

matters that are relatively minor and for which the prison grievance system would provide an

adequate remedy."  *Id.* at S7527.  He based the need for such reform in part on the comment by

Justice Rehnquist in his dissent in *Cleavinger v. Saxner*, where he observed, "With less to profitably

occupy their time *than potential litigants on the outside*, and with a justified feeling that they have

much to gain and virtually nothing to lose, prisoners appear to be far more prolific litigants than

other groups in the population."  *Cleavinger*, 474 U.S. 193, 211 (1985) (Rehnquist, J., dissenting)

(emphasis added).  It plainly appears that the purpose of the PLRA reforms was to curb the

litigiousness of prisoners presently in custody.

The Sixth Circuit has observed that another purpose of the PLRA's exhaustion requirement

was "to give increased powers to prisons so that they could solve their problems according to their

own internal dispute resolution systems."  *Jones Bey v. Johnson*, 407 F.3d 801, 807 (6th Cir. 2005);

*see also Porter v. Nussle*, 534 U.S. 516, 525 (2002) (observing that by enacting the PLRA,

"Congress afforded corrections officials time and opportunity to address complaints internally before

allowing the initiation of a federal case.  In some instances, corrective action taken in response to

an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating

the need for litigation").  That goal would not be achieved by requiring a plaintiff who no longer is

part of the prison population to return to the institution to partake of an internal administrative

dispute mechanism.

Other courts have reached the opposite view. *See, e.g., Morgan v. Maricopa County,* 259 F. Supp. 2d 985, 991-92 (D. Ariz.2003); *Zehner v. Trigg,* 952 F. Supp. 1318, 1327 (S.D. Ind.1997), *aff'd,* 133 F.3d 459 (7th Cir.1997); *Kerr v. Puckett,* 967 F. Supp. 354, 361-62 (E.D. Wis.1997). However, those decisions appear to constitute a minority position, as several other courts have held that the PLRA applies only to inmates confined at the time the lawsuit is commenced. *See Page v. Torrey*, 201 F.3d 1136, 1140 (9th Cir. 2000) (holding that the exhaustion requirement applies only to "individuals who, at the time they seek to file their civil actions, are detained as a result of being accused of, convicted of, or sentenced for criminal offenses"); *Greig v. Goord*, 169 F.3d 165, 167 (2d Cir.1999) (former prisoner not required to comply with PLRA); *Kerr v. Puckett*, 138 F.3d 321, 323 (7th Cir.1998) (same); *Doe v. Washington County*, 150 F.3d 920, 924 (8th Cir.1998) (same); *Kritenbrink v. Crawford*, 313 F. Supp. 2d 1043, 1047-48 (D. Nev. 2004) (stating that the "plain language of the statute" compels the "holding that the exhaustion requirement does not apply to former prisoners").

A district court in this circuit also has held that the PLRA does not apply to former inmates. *See Smith v. Franklin County*, 227 F. Supp. 2d 667 (E.D. Ky. 2002). In that case, the court observed that the reforms of the PLRA "will not be subverted by holding that the PLRA does not apply to former prisoners," and rejected the defendant's contention that the PLRA should be "stretched to include former prisoners." *Id.* at 675-76. The court reasoned:

> [T[his Court finds Defendants' proposed interpretation to be nonsensical. To require former prisoners to initiate or pursue those internal, administrative remedies once they have left the confines of a facility is a strained application of § 1997e at best. Former prisoners are no longer members of the community that such administrative processes and limitations are meant to serve. This is particularly so with those prisoners who are incarcerated for short periods of time as their opportunity to initiate and pursue administrative remedies while incarcerated is temporally limited at best.

*Ibid.*

This Court is convinced that the plain language of section 1997e(a) compels the conclusion that its requirements apply to prisoners who are confined when they file their lawsuits, and not to former inmates who bring actions after their release from custody. That construction of the statute is consistent with the purposes and goals of the Act and tracks the legislative history. Consequently, allowing the defendants to amend their affirmative defenses to plead the failure to exhaust remedies as required by 42 U.S.C. § 1997e(a) would be futile because that statute does not apply to all the named plaintiffs.

The defendants contend that even if the exhaustion requirement is inapplicable, the damage limitation should apply. That section of the statute states:

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

42 U.S.C. § 1997e(e).

In *Cox v. Malone*, 199 F. Supp. 2d 135, 139-40 (S.D.N.Y. 2002), the district court attempted to distinguish circuit precedent that the exhaustion requirement did not apply to former prisoners as a "procedural requirement" and held that the damage limitation did apply to former prisoners because it is a "substantive limitation." This Court cannot accept that distinction, however, because it ignores the plain language of the statute. Subsections (a) and (e) both refer only to "a prisoner confined in a jail, prison, or other correctional facility." The court in *Smith v. Franklin County* stated:

> The Sixth Circuit has yet to address this issue, but it is widely held that "prisoner" means someone confined, incarcerated, or detained, not a former prisoner. *See Abdul-Akbar v. McKelvie,* 239 F.3d 307, 314 (3rd Cir.2001); *Janes v. Hernandez,* 215 F.3d 541, 543 (5th Cir.2000); *Page v. Torrey,* 201 F.3d 1136, 1140 (9th

-18-

Cir.2000); *Harris v. Garner,* 216 F.3d 970, 981 (11th Cir.2000); *Greig v. Goord,* 169 F.3d 165, 167 (2nd Cir.1999); *Kerr v. Puckett,* 138 F.3d 321, 323 (7th Cir.1998); *Doe v. McKee,* 150 F.3d 920, 924 (8th Cir.1998).

*Smith*, 227 F. Supp. 2d at 675.  This Court agrees with that observation and further holds that there is no principled way to construe one section to include only current prisoners and expand the other to apply to former prisoners.  This Court has held in the past that the PLRA prohibits inmates from suing to recover mental anguish damages absent physical injury, although nominal, compensatory, and punitive damages are available upon appropriate proof.  *See Meade v. Plummer*, 344 F. Supp. 2d 569, 572-74 (E.D. Mich. 2004).  That limitation, however, does not apply to individuals who bring actions against their former custodians after release from custody, as in this case.

The defendants' proposed amendment also fails because it comes too late.  The Sixth Circuit has not addressed in a published opinion whether the exhaustion requirement is an affirmative defense that can be waived.  In fact, the court expressly declined to do so in *Curry v. Scott*, 249 F.3d 493, 501 (6th Cir. 2001) (stating "Plaintiffs point out that most courts to consider the issue *have* characterized the PLRA's exhaustion requirements as affirmative defenses. . . . We need not answer this argument here").  Courts in other circuits have treated the PLRA's requirements as affirmative defenses that must be pleaded lest they be waived.  *See, e.g., Anderson v. XYZ Correctional Health Serv., Inc.*, 407 F.3d 674, 681 (4th Cir. 2005) (stating that "an inmate's failure to exhaust his administrative remedies must be viewed as an affirmative defense that should be pleaded or otherwise properly raised by the defendant"); *Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004) (observing that "[t]he failure to exhaust available administrative remedies is an affirmative defense" and holding that "that this defense is waiveable"); *Foulk v. Charrier*, 262 F.3d 687, 697 (8th Cir. 2001) (holding that "the assertion that a plaintiff prisoner failed to exhaust all available

-19-

administrative remedies as required under the PLRA is an affirmative defense under Fed. R. Civ. P. 8(c).  It is the burden of the defendant asserting this affirmative defense to plead and prove it"); *Massey v. Helman*, 196 F.3d 727, 735 (7th Cir.1999) (holding exhaustion requirements are waivable if not asserted); *Perez v. Wisconsin Department of Corrections,* 182 F.3d 532, 536 (7th Cir.1999) (holding that PLRA's exhaustion requirement is an affirmative defense that can be waived or forfeited by defendants); *Jenkins v. Haubert,* 179 F.3d 19, 29 (2d Cir.1999) (ruling that section 1997e sets forth affirmative defenses under Fed.R.Civ.P. 8(e)); *Jackson v. District of Columbia,* 89 F. Supp. 2d 48, 57 (D.D.C.2000) (same).

If, as the majority of courts hold, the defenses are waiveable, surely the defendants have waived them here.  Almost three years have past since the plaintiffs filed their sixth amended complaint.  The defendants have filed motions and made appearances before this court arguing the merits of the case.  The court has adjudicated the cross motions for summary judgment and held that the defendants' practice and policy is unconstitutional.  The request to amend the affirmative defenses is untimely.

### V.

The Court finds that the plaintiffs have not established the required elements to permit certification of their proposed class.  The defendants' request to amend their affirmative defenses must fail because of futility and untimeliness.

Accordingly, it is **ORDERED** that the plaintiffs' motion for class certification or joinder and continued tolling [dkt # 172] is **DENIED**.

It is further **ORDERED** that the defendants' motion to amend affirmative defenses [dkt # 194] is **DENIED**.

-20-

It is further **ORDERED** that the attorneys for the parties shall appear for a status conference

on **December 15, 2005 at 2 p.m.** to discuss a schedule for resolution of the claims that remain.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: November 21, 2005

<div style="border:1px solid">

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on November 21, 2005.

s/Tracy A. Jacobs
TRACY A. JACOBS

</div>